Defendant-appellant Jason Carr appeals from his conviction and sentence for Felonious Assault. He contends that he was denied the effective assistance of trial counsel, and that the evidence in the record is insufficient to prove that he aided and abetted in the Felonious Assault. We conclude that the evidence in the record is sufficient to support the charge, and that the record does not demonstrate ineffective assistance of counsel. Accordingly, the judgment of the trial court isAffirmed.
 I
Shortly after midnight in early August, 1997, Carr was involved in an altercation at a party at the home of Kimberly Tegtmeyer. Joey Green was seriously injured. Carr does not dispute that he hit Green, but contends that he did not seriously hurt Green. Green's serious injury was apparently caused by others, including Carr's brother, who participated in the beating.
The issue of fact was whether Carr was an aider and abetter in the assault upon Green.
After the State presented its evidence, Carr rested without putting on any evidence of his own, or testifying in his own defense. Carr was convicted of Felonious Assault, and sentenced accordingly. From his conviction and sentence, Carr appeals.
 II
Carr's First Assignment of Error is as follows:
 APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS.
Carr contends that he was denied that effective assistance of trial counsel when his trial counsel decided neither to call him as a witness, nor to call any other witnesses in his behalf.
Carr contends that had he and his witnesses testified, he would have shown that he was not in complicity with the assault upon Green that resulted in serious physical harm.
Carr cannot establish, on this record, that his own testimony or that of others called on his behalf would have helped him. Carr's attorney, being licensed, was presumptively competent. Accordingly, we must presume that trial counsel's decision neither to call Carr nor his witnesses was sound, or at least not so unsound as to constitute ineffective assistance of counsel, unless the record demonstrates otherwise. Consistently with this record, Carr's trial counsel may have concluded that his testimony, and that of his friends, would only have helped the State to establish that Carr was part of a group that had planned to attack and seriously injure Green.
Because the testimony that Carr and his witnesses would have given, had they been called, is outside the record, he cannot make out his claim of ineffective assistance of trial counsel in a direct appeal. In a post-conviction relief proceeding, on the other hand, evidence could be presented tending to show what Carr's trial counsel knew concerning the testimony that Carr and his witnesses might have been expected to give at trial.
Based upon the record before us, Carr's First Assignment of Error is overruled.
 III
Carr's Second Assignment of Error is as follows:
 THE EVIDENCE PRESENTED BY THE STATE OF OHIO DID NOT PROVE THAT THIS APPELLANT ACTED IN A MANNER THAT CONSTITUTED AIDING AND ABETTING AS REQUIRED BY OHIO LAW.
The State prosecuted Carr upon the theory that he was an aider and abetter. Although Carr himself struck Green, the State was not prepared to claim that serious injury resulted from the blow that Carr struck. It appears to be undisputed that Green was seriously injured as a result of one or more other blows that were struck; the State contended that Carr was in complicity with those whose blows caused serious harm.
The evidence in the record includes the testimony of the victim, Joey Green, that a group of people, including Carr, came downstairs to the basement where Green was. Green then testified as follows:
 A. After they come down, the basement door shuts and Terry Stevens says, "We came to see somebody get served on. On the count of five, we'll see that person get served. We are going to separate the bitches from the 'bout it 'bout it." [sic]
* * *
 Q. All right. And you say he started to count down from five?
A. Yes, sir.
 Q. And did he count like five, four, three, two, one?
A. Yes, sir.
Q. And when he got to one, what happened?
 A. After a count of one, sir, I got hit on the left side of my head by Brian Peters.
* * *
 Q. And what happened after Brian Peters hit you in the face?
 A. He hit me on top of my head. After he hit me, I was shocked, I was stunned. I wasn't expecting to get hit. I kind of looked up at him and I asked him to stop, and after he hit me, I got hit a second time kind of in the same area by Jason Carr.
* * *
Q. When the Defendant hits you, what happened?
 A. After he hits me, I didn't realize it at the time, but he hit me hard enough to where blood started coming out of my head, and finally I kind of looked down on my shirt and I seen, you know, drops of blood on my shirt and then after he hit me I covered up my head and I got hit a third time by his brother.
* * *
 Q. Okay. And where did the Defendant's brother hit you?
A. Right here in my face. (indicating)
Q. Like on your nose?
 A. Like nose and top of my mouth where my teeth are.
 Q. Now, at this time are you noticing blood coming down the side of your face?
A. Yes, sir.
 Q. Is that from the shot the Defendant gave you on the head?
A. Yes, sir.
 Q. Okay. Now, after Steve, after the Defendant's brother hits you, what happens next?
 A. I'm trying to plead with them to quit hitting me. I asked them to stop, told them whatever I did I was sorry for it, and after he hit me I was still covering up trying, you know, to protect myself, and then I get hit a fourth time and it came from the left side.
 Q. Okay. At that point you're covering up trying to protect yourself? (indicating)
 A. Yes, sir. I'm more like (indicating,) trying to —
Q. (Indicating.)
A. Yes, sir.
 Q. Now, as they're hitting you, you are pleading with them to stop, is that right?
A. Yes.
 Q. What happens after you get hit the fourth time?
 A. After the fourth time I get hit, Terry Stevens told — they said it was enough. They said give me a towel, and at that time I think Kim Tegtmeyer gave me a towel, and I proceeded to go to the bathroom to clean myself up and to get another towel, and at that time Terry was standing in the entrance to the bathroom and when I walked into the bathroom I looked at myself in the mirror and I was covered in blood, couldn't breathe because my nose had been broke and my jaw was broke, and when I walked in the bathroom Terry said, "You'd better, you know, you'd better not," and he looked on his shirt and there was a small speck of blood on his shirt.
 At this time, he got furious, and when he looked on his shirt I walked out of the bathroom and at that time he started coming after me and then people that was there jumped — like they tried to hold him back. While they were holding him back I proceeded to run up the stairs and out of the house.
The State's evidence also included the testimony of Xenia Police Lieutenant James Huston, who interviewed Carr. Huston testified as follows:
 Q. All right. First of all, did you ask the Defendant whether or not he, in fact, punched Joey Green in the head area?
A. Yes, I did.
Q. And what did the Defendant say about that?
A. He did.
 Q. Okay. And did he describe to you the incident of how it happened and what happened after he had punched the victim?
A. Yes.
Q. What did he say?
 A. He indicated that he was at this party and they planned — there were several people that got together. They had some problems with Joey Green and they discussed what they were going to do. They went downstairs into the basement and they did it and he, Jason, hit him in the head and he stated that it split his head open and blood went everywhere and it scared him, he, Jason. Jason said, "It scared me."
 Q. I want to back up for a second. The Defendant told you that they had planned this because they had a problem with Joey Green.?
A. Yes, sir.
 Q. Okay. And the Defendant told you that when he punched Joey Green in the head it split his head and blood went everywhere?
* * *
 Q. Sorry, Lieutenant. Did the Defendant tell you anything with respect to his reaction to Jason — I'm sorry, to Jason's head being split open and blood going everywhere?
A. He said it scared him.
 Q. It scared him. Now, when he said that — when the Defendant said that they had planned this, did he tell you who the people were that were involved in planning this?
A. Yes, he did.
Q. And did he name any individuals to you?
A. Yes, he did.
 Q. Okay. And among those individuals, was one of them Steven Carr?
A. Yes.
Q. And do you know Steven Carr?
A. Yes, I do.
Q. Who is Steven Carr?
A. Steven Carr is Jason's older brother?
 Q. And did your investigation reveal whether Steven Carr was involved in this matter?
A. Yes.
 Q. Without going into — giving me — telling me why, did the Defendant tell you what his motive was for hitting Joey Green that night?
A. Yes, he did.
Q. And did that involve alleged gang activity?
A. Yes, it did.
Although it may not be overwhelming, in our view the testimony quoted above is sufficient to permit a reasonable fact finder to conclude that Carr was part of a group that had planned to attack Joey Green, causing him serious physical harm.
Carr's Second Assignment of Error is overruled.
 IV
Both of Carr's assignments of error having been overruled, the judgment of the trial court is Affirmed.
YOUNG, P.J., and BROGAN, J., concur.
Copies mailed to:
William F. Schenck Patrick A. Flanagan Hon. M. David Reid